# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

In Re: L.S.

**FILED**

November 24, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-0506 (Raleigh County 12-JA-51)

## MEMORANDUM DECISION

Petitioner Steven K. Mancini, guardian ad litem for the mother below, appeals the Circuit Court of Raleigh County's April 23, 2014, order terminating her parental rights to L.S. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order and a supplemental appendix. The guardian ad litem for the child, Mary Beth Chapman, filed a response on behalf of the child supporting the circuit court's order and a supplemental appendix. On appeal, petitioner alleges that the circuit court erred in proceeding to disposition without requiring that a family case plan be filed and in terminating the mother's parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2012, the DHHR filed an abuse and neglect petition against the parents alleging aggravated circumstances due to a prior involuntary termination of parental rights to an older child. In July of 2012, the circuit court held an adjudicatory hearing, during which petitioner stipulated to the allegations and was awarded a post-adjudicatory improvement period. Following a court-ordered psychological evaluation, the circuit court appointed a guardian ad litem for the mother. In December of 2012, at a multi-disciplinary treatment team ("MDT") meeting, a family case plan was formulated and signed by the mother. Additionally, during the pendency of the proceedings below, the mother gave birth to another child, K.R. According to her testimony below, the mother did not want the DHHR to take custody of the child, so she arranged to give birth in Utah and allowed an adoptive family to take custody.[1]

Following several review hearings regarding the mother's improvement period and an extension to the same, the DHHR filed a motion to terminate her parental rights in October of

---

[1]The dispositional transcript indicates that the DHHR contacted Child Protective Services in Utah to initiate a homestudy procedure pursuant to the Interstate Compact on the Placement of Children to assure that K.R.'s home was appropriate. Accordingly, the circuit court terminated the mother's parental rights to L.S. only, as she voluntarily relinquished her rights to K.R. by giving the child up for adoption. This memorandum decision, therefore, concerns only L.S.

2013. The following month, the circuit court held a hearing on the motion and continued the same until January 28, 2014, at which point the circuit court heard additional witnesses, but again continued the matter for the DHHR to present additional witnesses. In April of 2014, the circuit court held a final hearing on the DHHR's motion to terminate and proceeded to disposition. Ultimately, the circuit court terminated the mother's parental rights. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court proceeding to disposition without a family case plan being filed or in terminating the mother's parental rights.

We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). In discussing family case plans, this Court has stated that

> "[t]he purpose of the family case plan as set out in W.Va.Code, 49–6D– 3(a) (1984), is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 5, *State ex rel. Dep't of Human Services v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987).

2

Syl. Pt. 2, *In re Desarae M.*, 214 W.Va. 657, 591 S.E.2d 215 (2003). While petitioner is correct that West Virginia Code §§ 49-6-2(b) and 49-6D-3(a) require a family case plan be filed within thirty days of the improvement period's inception, the Court declines to find error under the specific limited circumstances of this case because a case plan was created and signed by the parties, and because the mother failed to improve throughout the extended duration of the proceedings below. The record shows that the case plan required the following of petitioner: (1) perform parental duties and responsibilities on a daily basis; (2) obtain adequate knowledge to fulfill caregiving responsibilities and tasks; (3) demonstrate appropriate hygiene and keep the home sanitary on a daily basis; (4) control anger, make good decisions, control mood (with medication, if necessary), and form healthy relationships; and (5) demonstrate the ability to provide basic necessities. As such, it is clear that the mother was provided with a clear set of goals necessary to achieve reunification with her child.

Moreover, it is clear that the mother's lack of improvement was unrelated to any alleged deficiency in filing a case plan, and instead was a result of her inability to properly care for the child. Unfortunately, despite extensive services, the mother was unable to substantially correct the conditions of abuse and neglect in the home such that reunification was appropriate. For these reasons, the Court finds no due process violation in the circuit court proceeding to disposition absent a properly filed case plan under the limited circumstances of this case.

As to termination of the mother's parental rights, the Court finds no error. As noted above, the mother was presented with a case plan in order to set forth an organized, realistic method of identifying and resolving the issues that led to the child's removal. It is clear that the mother was aware of parenting deficiencies that needed correcting, including maintaining a suitable, clean home, and providing appropriate care for the newborn child, yet failed to improve in these regards. Moreover, in spite of the mother's participation in specific services, including parenting education, she failed to apply the education in a way that lessened the conditions of abuse and neglect in the home. Ultimately, the circuit court found that the mother did not understand the significance of her child's special needs and was simply unable to care for her. While petitioner argues that the circuit court could not make such findings because it was not aware of the specific terms of her family case plan, the Court finds this argument without merit. The record is clear that a Child Protective Services ("CPS") worker testified regarding the terms of petitioner's treatment plan and her failures in complying with the terms thereof.

The circuit court's findings regarding petitioner's inability to care for her child were based upon substantial evidence from petitioner's service providers establishing that after extensive services, significant issues with the mother persisted through disposition. Specifically, the mother exhibited poor personal hygiene that required several visits with the child to be canceled because the child would become sick from the odor. In fact, the mother's hygiene was so severe that she required medical assistance to address the same. Further, the mother failed to sustain a suitable home for the child. During the proceedings, animal control seized three dogs from the parents and cited them for animal neglect. Additionally, the parents' home lacked plumbing and had terrible odors emanating from within, such that the home was ultimately condemned. Thereafter, the parents resided in a tent in a relative's yard, and then moved into the home of the child's maternal grandmother. The DHHR noted that the grandmother had

previously had her parental rights to the mother terminated in a separate abuse and neglect proceeding.

As such, it is clear that there was sufficient evidence upon which the circuit court could have found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect, and that termination of her parental rights was necessary for the child's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon these findings. While petitioner argues that the circuit court based termination entirely upon a finding of untrustworthiness due to her leaving the jurisdiction to give birth to a second child, it is clear that this was only one factor among many that the circuit court relied upon to reach its determination. Petitioner argues that it was error to base termination upon this factor because the DHHR did not move for custody of the child, and because she was not expressly forbidden from having the child outside the circuit court's jurisdiction. However, the Court finds no merit to this argument because the mother's actions were clearly relevant in light of her stated reason for giving birth to the child in Utah in order to prevent the DHHR taking custody of the child upon her birth. For these reasons, under the limited circumstances of this case, the Court declines to find that the process established for abuse and neglect proceedings was "substantially disregarded or frustrated" such that vacating the resulting order is warranted.

For the foregoing reasons, we find no error in the decision of the circuit court and its April 23, 2014, order is hereby affirmed.

Affirmed.

**ISSUED**: November 24, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

4